IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| John Libit, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 12 C 08877<br>) |
| Village of Deerfield, | ) Judge Virginia M. Kendall<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION AND ORDER

John Libit filed this action against the Village of Deerfield alleging that the Village discriminated against him in violation of the Americans with Disabilities Act ("the ADA"), 42 U.S.C. 12101, *et seq*. Libit claims the Village failed to reasonably accommodate his disability and then discharged him from his position as a Maintenance Operator II. The Village now moves for summary judgment. For the following reasons, the Court grants the Village's Motion for Summary Judgment.

## I. FACTS[1]

Libit began working for the Village as a Maintenance Operator I in the Public Works Department, sewer division, in 1994. (Pl. 56.1 Resp. ¶ 5). He was later promoted to Maintenance Operator II (MOII), which was the position he held at all times relevant to the matter now before the Court. (*Id.*)

---

[1] As an initial matter, the Court declines to Strike Paragraphs 88 through 112 of Plaintiff's Statement of Additional Facts. Although this Court has considerable discretion to mandate strict compliance with Rule 56.1, including to mandate that filings comply with the prescribed length and formatting requirements, such a harsh remedy is not warranted in this case. *See, e.g., Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("We have also repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1").

The MOII position requires employees to perform a variety of semi-skilled laborer duties such as removal and replacement of asphalt and concrete materials, sewer and water installation, grounds maintenance, material hauling, and snow and ice control. (*Id*. at ¶ 6). The MOII employees also perform Joint Utility Locating Information for Excavators ("JULIE"), which entails locating and marking utilities at the request of a citizen. (*Id*. at ¶¶ 8, 9).

Due to the nature of their work, MOIIs must be able to "perform physically strenuous tasks as lifting or shoveling" and "operate some specialized equipment such as a front-end loader, backhoe, concrete saw, chain saws and sewer rodder." (*Id*. at ¶ 6). The job description identifies "lifting, bending, twisting, shoveling, climbing ladders, and lifting 75 or more pounds" as the minimum physical requirements for an MOII. (*Id*.)

Until 2008, Libit performed all the duties for an MOII and met the physical requirements of the position. (*Id*. at ¶ 17). He also did "whatever they told [him] to do," including performing JULIE locates; supervising construction and road reconstruction; and meeting with building, water, and sewer contractors and inspectors. (*Id*.) Then, on October 6, 2008, Libit injured his lower back while lifting a piece of concrete. (*Id*.) He was diagnosed with lumbar disc disorder and sprain and underwent a series of back surgeries. (*Id*. at ¶ 19).

After this diagnosis, between October 6, 2008 and April 2010, Libit worked on and off as an MOII, with various physical restrictions. (*Id*. at ¶ 20). From the summer of 2011 until January 2012, Libit was limited to working four hours per day and was assigned to JULIE locates, retrieving parts for the crew, bringing the crew coffee, and driving equipment to jobsites. (*Id*. at ¶¶ 20-22). Libit considered this position—where his primary responsibility was JULIE locates—to be a permanent light duty position. (*Id*. at ¶ 23; Def. 56.1 Resp. ¶ 54).

In January 2012, at the recommendation of Dr. Susan Piazza, Libit returned to work without any physical restrictions. (Pl. 56.1 Resp. ¶ 25). The only restriction imposed by Dr. Piazza was to limit Libit's workday to six hours. (*Id*.) Meanwhile, another Village employee was assigned to the JULIE locates. (*Id*. at ¶ 27). Though Libit nominally returned to regular MOII duty in January 2012, he mostly drove the truck because the sewer division foreman, Dave Fejes, did not think he could do much else. (*Id*. at ¶ 26). Libit claimed his back pain began to worsen when he returned to regular crew operations due to increased activity and more physically demanding work. (*Id*. at ¶ 30).

On April 11, 2012, Dr. Piazza restricted Libit to a 10-pound lifting, pushing, and pulling limit; no bending; and a 4-hour workday. (*Id*. at ¶ 34). One week later, Dr. Piazza restricted Libit to a 20-pound lifting, pushing, and pulling limit; no repetitive bending; and a 4-hour workday. (*Id*.)

On April 27, 2012, the Village met with Libit for the stated purpose of discussing whether the Village could provide any reasonable accommodation for Libit to perform the essential functions of his job position. (*Id*. at ¶ 37). By the time of this meeting, Libit did not believe he could return to work full duty as an MOII. (*Id*. at ¶ 40). He was unable to perform heavy lifting, shoveling, bending, or twisting; lift the required 75 pounds; get down in a hole; dig up water mains or sewers; carry heavy equipment; stand or sit for long periods; snowplow; or hold a traffic sign for a long period of time when doing so required standing for a long period of time. (*Id*. at ¶ 40; Dkt. No. 55, Ex. E, 96, 104-105, 127-128).

The Village terminated Libit on May 4, 2012 because of his "inability to perform the normal tasks of the job even with an accommodation." (Pl. 56.1 Resp. ¶¶ 44-45). Libit filed a

charge of discrimination with the EEOC on August 22, 2013 and this case followed. (*Id*. at ¶¶ 44, 46).

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Hoffman v. Caterpillar Inc.*, 256 F.3d 568, 571 (7th Cir. 2001). In determining whether there is a genuine issue of material fact, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. DISCUSSION

Libit claims the Village violated the ADA by failing to provide him with a reasonable accommodation for his disability. *See* 42 U.S.C. § 12101, *et seq*. To maintain a failure to accommodate cause of action under the ADA, a plaintiff must show that: (1) he is a "qualified individual with a disability;" (2) the defendant knew of the disability; and (3) the defendant failed to reasonably accommodate his disability. *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 678 (7th Cir. 2010).

### A. LIBIT'S DISABILITY

An individual is disabled under the ADA where (1) he has a physical or mental impairment that substantially limits one or more of his major life activities; (2) he has a record of such an impairment; or (3) he is regarded as having such an impairment by his employer. 42 U.S.C. § 12102(1). Determining whether an individual is disabled within the meaning of the ADA is a fact-specific inquiry. *See DePaoli v. Abbott Labs.*, 140 F.3d 668, 672 (7th Cir. 1998).

In this case, a reasonable jury could find that Libit was disabled under the statute under the third prong because a question exists as to whether the Village regarded Libit as having a substantial physical impairment.

In 2008, Libit was diagnosed with a lumbar disc disorder and sprain. (Pl. 56.1 Resp. ¶ 19). He subsequently underwent several surgeries on his back and has since suffered from varying levels of physical restrictions and pain. (*Id*. at ¶¶ 19, 25, 32, 34, 35). Although Libit's inability to perform heavy lifting, bending, shoveling, and twisting does not substantially limit a major life activity, an issue remains as to whether the Village regarded Libit as having an actual or perceived physical impairment. *See* 18 USC § 12102(3)(A) ("[a]n individual meets the requirement of "being regarded as having an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter…whether or not the impairment limits or is perceived to limit a major life activity").

Here, when Libit returned to regular crew following his back surgeries, he mostly drove the truck because the sewer division foreman, Dave Fejes, did not think he could do much else. (Pl. 56.1 Resp. ¶ 26). Fejes observed Libit showing signs of physical discomfort, such as walking slowly and exhibiting poor posture. (*Id*. at ¶ 26). Fejes reported these observations to the Village's Assistant Director of Public Works and Superintendent of Streets and Utilities. (*Id*. at ¶ 32). Based on these facts, a reasonable jury could find that the Village regarded Libit as having a substantial physical impairment and that Libit was therefore disabled within the meaning of the statute.

## B. QUALIFIED INDIVIDUAL

Although a genuine issue of material fact exists as to whether Libit was "disabled" within the meaning of the ADA, Libit has failed to make the requisite showing of being a "qualified

individual" to perform the essential functions of an MOII. An individual is qualified if he is able "to perform the essential functions of the job, with or without reasonable accommodation." 42 U.S.C. § 12111(8); *Gratzl*, 601 F.3d at 679; *Hoffman*, 256 F.3d at 572. The issue here is whether lifting and other physically strenuous activities that Libit was unable to perform due to his back injuries were essential functions of his job as an MOII.

In order to determine whether a particular duty is an essential function, the Court considers "the employee's job description, the employer's opinion, the amount of time spent performing the function, the consequences for not requiring the individual to perform the duty, and past and current work experiences." *Ammons*, 368 F.3d at 819; *accord Gratzl*, 601 F.3d at 679; 29 C.F.R. § 1630.2(n)(3); *Miller v. Illinois Dept. of Transp.*, 643 F.3d 190, 197-98 (7th Cir. 2011).

Here, the written job description for an MOII includes "a variety of semi-skilled laborer duties such as removal and replacement of asphalt and concrete materials, sewer and water installation, grounds maintenance, material hauling, snow and ice control." (Pl. 56.1 Resp. ¶ 6). Qualifications for the position include the "[a]bility to perform physically strenuous tasks as lifting or shoveling" and the "[a]bility to operate some specialized equipment such as a front-end loader, backhoe, concrete saw, chain saws and sewer rodder." (*Id.*) The minimum physical requirements for the position are "lifting, bending, twisting, shoveling, climbing ladders, and lifting 75 or more pounds." (*Id.*)

Libit does not dispute that at the time he was discharged from the Village he did not believe he could return to work full duty as an MOII. (*Id.* at ¶ 40; Dkt. No. 45, Ex. E, 104). He could not perform heavy lifting, shoveling, bending, or twisting; lift the required 75 pounds; get down in a hole; dig up water mains or sewers; carry heavy equipment; stand or sit for long

periods; snowplow; or hold a traffic sign for a long period of time when doing so required standing for a long period of time. (Pl. 56.1 Resp. ¶ 40; Dkt. No. 55, Ex. E, 96, 104-105, 127-128). Instead, Libit argues he was performing the essential functions of his job as MOII with the accommodations of only doing JULIE locates and driving the truck. Although doing JULIE locates and driving a truck may be important functions of the MOII, Libit must be capable of performing enough of the essential duties of the position in order to be qualified as an MOII. *See, e.g., Basith v. Cook County*, 241 F.3d 919, 929 (7th Cir. 2001) (a disabled employee will not be qualified for the position unless he can perform enough of the various duties of a job to enable a judgment that he can perform its essential duties); *compare Miller*, 107 F.3d at 485 (IDOT worker's fear of heights did not render him unqualified because his fear impacted about 3% of job requirements and team of workers routinely accommodated each other in performing such small tasks). Here, it is clear that Libit in not able to perform a significant number of the physical requirements of the position including carrying heavy equipment and digging up water mains or sewers. Merely because the Village accommodated his disability by permitting him to solely drive the truck and perform JULIE locates as an accommodation does not change the fact that Libit was unable to perform the majority of the essential functions of the position.

## C. REASONABLE ACCOMMODATION

Even if Libit were disabled and qualified to perform the tasks of an MOII, his claim still fails as a matter of law because the only accommodation he requested—permanent reassignment to JULIE locate duty—was not a reasonable accommodation. Reasonable accommodations may include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate

7

> adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). Because Libit bears the burden of establishing that he can perform the essential functions of his job "with or without reasonable accommodation," *Gratzl*, 601 F.3d at 680, he has not met this burden if the only accommodation he has ever suggested is not reasonable.

An employer need not create a new job or strip a current job of its principal duties to accommodate a disabled employee. *Gratzl*, 601 F.3d at 680; *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996). Nor is there any duty to reassign an employee to a permanent light duty position. *Watson v. Lithonia Lighting and Nat'l Serv. Indus., Inc.*, 304 F.3d 749, 752 (7th Cir. 2005). Although Libit concedes he was not able to return to work in his previous capacity as an MOII, "the ADA may require an employer to reassign a disabled employee to a different position as reasonable accommodation where the employee can no longer perform the essential functions of [his] current position." *Gile*, 95 F.3d at 498; *see* 42 U.S.C. § 12112(b)(5)(A), (B). However, this "duty to reassign a disabled employee has limits. The employer need only transfer the employee to a position for which the employee is otherwise qualified." *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 633 (7th Cir. 1998); *Gile* 95 F.3d at 499. In this case, Libit requested he be reassigned to a position completing JULIE locates and driving the truck. (Pl. 56.1 Resp. ¶ 31). He alternatively claims that he could have worked as a supervisor, backhoe operator, or parts runner. (*Id.* at ¶ 41). If Libit were able to show the availability of any of these positions at the time of his termination, the Court would agree that there was an issue of fact as to whether the Village adequately considered Libit's request. However, Libit has failed to demonstrate that any of these positions were available at the time of his termination. *See Kotwica v. Rose Packing Co.,*

*Inc.*, 637 F.3d 744, 750 (7th Cir. 2011) (plaintiffs "bear the burden of showing that there is a vacant position in existence for which they are qualified").

Furthermore, Libit's argument that the Village's engagement in the interactive process required under the ADA to develop reasonable accommodations was a "sham or pretext" is insufficient to survive a motion for summary judgment. The interactive process required under the ADA is not an end in itself. *See Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013) (noting that the interactive process does not give rise to an independent basis of liability under the ADA). To survive a motion for summary judgment, Libit must demonstrate something more than the Village failing to engage in an interactive process or causing the interactive process to devolve: he must show "that the result of the inadequate interactive process was the failure of the City to fulfill its role in 'determining what specific actions must be taken by an employer' in order to provide the qualified individual a reasonable accommodation." *Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000), *citing Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996); *see also Basden*, 714 F.3d at 1039 ("Even if an employer fails to engage in the required process, that failure need not be considered if the employee fails to present evidence sufficient to reach the jury on the question of whether she was able to perform the essential functions of her job with an accommodation"). Because Libit has failed to allege that the result of any breakdown in the process resulted in the Village's failure to provide a reasonable accommodation, there is no genuine issue of material fact on this issue.

## CONCLUSION

For the reasons stated herein, the Village's Motion for Summary Judgment is granted.

_____
United States District Court Judge
Northern District of Illinois

Date: 3/25/2015